## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| Velma Lawrence, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  10-CV-1240 |
| | ) | |
| East Central Illinois Area Agency | ) | |
| on Aging, | ) | |
| Tami Wacker, and | ) | |
| Michael O'Donnell, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff, proceeding pro se, pursues various claims arising from her termination as an employee of the East Central Illinois Area Agency on Aging.  Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6), or for a more definite statement pursuant to Fed. R. Civ. P. 12(e).  For the reasons below, the Court recommends that the motion be granted in part and denied in part.

### Legal Standard

To state a claim under federal notice pleading standards, the Complaint must set forth a "short and plain statement of the claim showing

that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Factual

allegations are accepted as true and must give "'fair notice of what the . . .

claim is and the grounds upon which it rests.'"  EEOC v. Concentra Health

Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp.

v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted).  However,

the "' . . . allegations, [must] show that it is plausible, rather than merely

speculative, that [the plaintiff] is entitled to relief.'"  Tamayo v. Blagojevich,

526 F.3d 1074, 1083 (7th Cir. 2008)(quoted and other citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. . . . Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not

suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), *citing* Twombly,

127 S.Ct. 1955.  The Court keeps in mind, however, that pro se pleadings

are liberally construed.  Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir.

2009).

## Allegations

Plaintiff worked for the East Central Illinois Area Agency on Aging

(the "Agency") for 21 ½ years until her discharge on September 30, 2009,

at the age of 80 years old. (Complaint ¶ 22). She was performing her job satisfactorily and there were no legitimate complaints about her performance of which she was aware. (Complaint ¶ 22). Defendants cited financial reasons for her termination, but she was the only one terminated. She was given no warning nor any opportunity to work in another position or to train for a different position. (Complaint ¶ 31). A similarly situated younger employee received opportunities at promotion and training which were not afforded to Plaintiff, despite Plaintiff's superior experience. (Complaint ¶ 31). Plaintiff's full-time position had already been cut to a part-time position before her termination, and this younger employee was hired to perform essentially the same duties. (Complaint ¶¶ 28, 51). Plaintiff advised Defendants of her concerns regarding the lack of promotional and advancement opportunities, to no avail. (Complaint ¶ 53).

After Plaintiff's termination, Defendants bought new computers for all the employees, plus two new computers for each manager. (Complaint ¶ 29). They also spent large sums to remodel the office. (Complaint ¶ 30). Plaintiff believes that these expenditures demonstrate that she was not terminated for financial reasons. Plaintiff alleges that the real reason for

her termination was her age "and her exercise of free speech rights and by personal malice." (Complaint ¶ 33).

About two weeks after Plaintiff was notified of her termination, she was offered a severance package in return for waiving her legal claims arising from her termination. (Complaint ¶¶ 35-36). The Court presumes that she declined to do so, since she filed a complaint with the EEOC and then filed this lawsuit.

## Analysis

Defendants argue that several of the claims must be dismissed because the statutory Acts cited by Plaintiff apply only to employers with at least 15 employees. Since Plaintiff has not alleged that the Agency has 15 employees, they posit, the Complaint must be dismissed.

Plaintiff correctly points out, however, that the employee-numerosity requirement in Title VII is not jurisdictional. Arbaugh v. Y&H Corp., 546 U.S. 500, 503-04 (2006). Instead, it is a "mandatory case-processing rule" that can be waived or forfeited. EEOC v. Watkins Motor Lines, Inc., 553 F.3d 593, 596 (7th Cir. 2009); Arbaugh, 546 U.S. at 504 ("employee-numerosity requirement relates to the substantive adequacy of Arbaugh's Title VII claim, and therefore could not be raised defensively late in the

lawsuit . . . .").  Defendants make no argument that <u>Arbaugh</u>'s does not

extend to actions under the Age Discrimination in Employment Act of 1967

or to the other Acts cited by Plaintiff which have employee-numerosity

requirements.  Thus the Court concludes that it is Defendants' burden to

raise and prove that Plaintiff fails to meet the employee-numerosity

requirement.[1]

A general comment is in order before analyzing Plaintiff's specific

claims.  Defendants do not raise the issue, but some of the causes of

action cited by Plaintiff apply only to government action, such as her cites

to the First and Fourteenth Amendments and to 42 U.S.C. §§ 1983, 1985

and 1986.  It is not clear yet whether the Agency's employees can be

considered government actors.  Plaintiff alleges that the Agency is a not-

for-profit corporation.  However, the Agency's website states that it derives

its authority from the Older American's Act, 42 U.S.C. § 3001 *et seq.*.  *East

Central Illinois Agency on Aging,* www.eciaaa.org (last visited 2/16/11).

The Older American's Act establishes federal grants for the administration

of programs for older citizens.  42 U.S.C. § 3021, 3023.  The website for

---

[1]The EEOC notice is blank in the box that states that no action is being taken because "Respondent employs less than the required number employees . . . ." This at least implies that the numerosity requirement is satisfied.  (d/e 1, p. 21).

the Illinois Department of Aging states that its federal and state funds are coordinated through "area agencies on aging," one of which is Defendant. *Illinois Department on Aging*, www.state.il.us/aging (last visited 2/16/11); *see also* Chicago v. Lindley, 66 F.3d 819, 821 (7th Cir. 1995).[2]  At this point the Court assumes, without deciding, that the "state actor" requirement can be met.  *See, e.g.,* Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 177-180 (6th Cir. 2008)(termination of employee of area agency on aging was an act under color of state law).  A more developed factual record will illuminate the relationship between the Agency and the State.

The Court has one more general comment.  The Court's conclusions below are often based on issues not raised by Defendants in their scant brief, but which are so indisputable that the Court believes dismissal is all but mandated.  *See* Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) ("Sua sponte 12(b)(6) dismissals are permitted, provided that a sufficient

---

[2]"Under the Older Americans Act, 42 U.S.C. §§ 3001-3058ee, the federal government distributes funds to the states each year. The states use these funds to provide a wide range of services to their 'older individuals,' whom the statute defines as individuals '60 years of age or older.' 42 U.S.C. § 3002(38). The OAA requires each state to designate an agency responsible for creating a formula to determine the intrastate distribution of OAA funds. *Id.* § 3025(a)(1)(A). That state agency must, in turn, divide the state into subdivisions known as "planning and service areas," or "PSAs," and must designate an area agency on aging for each PSA. *Id.* § 3025(a)(1)(E).  In Illinois, the state agency is the Illinois Department on Aging (IDoA). The State is divided into thirteen PSAs, . . . ." Lindley, 66 F.3d at 820-21.  "The area agencies on aging may, but need not be, governmental entities."  Id. at n. 1.

basis for the court's action is evident from the plaintiff's pleading.").  Plaintiff

did not have an opportunity to address these issues because they were not

raised by Defendants, but that opportunity is not lost to her.  She may

address the issues in objections to this Court's recommendations.

**I.      Federal Claims:  Plaintiff states federal claims for age**
**         discrimination and retaliation under the Age Discrimination and**
**         Employment Act of 1967.  She also states a possible federal**
**         claim under the Equal Protection Clause of the Fourteenth**
**         Amendment, actionable through 42 U.S.C. § 1983.**

Plaintiff states a plausible claim for age discrimination under the Age

Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1)("ADEA").

She alleges that, at 80 years old, she was discharged for pretextual

reasons, while a younger employee with less experience was kept on in the

same position and, prior to Plaintiff's discharge, treated more favorably

than Plaintiff with regard to opportunities for training and advancement.

Plaintiff also states a plausible ADEA claim for retaliation for

complaining about the discriminatory treatment.  29 U.S.C. § 623(d)("It

shall be unlawful for an employer to discriminate against any of his

employees . . . because such individual . . . has opposed any practice

made unlawful by this section.").  She alleges that she

> had well advised defendants of her concerns, on numerous
> occasions prior to her alleged wrongful termination, which

mostly all went ignored, and in fact, the defendants committed further acts designed to cover up the patent discrimination against the plaintiff because of her age, because of her exercise of free speech and because of defendant's personal malice toward plaintiff.

(Complaint ¶ 53). Liberally construed, the Court believes this adequately alleged that Defendants retaliated against her for speaking out about the discrimination.

Plaintiff might also state a Fourteenth Amendment equal protection claim, brought pursuant to 42 U.S.C. § 1983. *See* <u>Levin v. Madigan</u>, 697 F.Supp.2d 958, 970 (N.D. Ill. 2010)(concluding that ADEA was not exclusive remedy for age discrimination claim, and allowing equal protection claim to proceed).[3] An equal protection claim would drop out if the defendants are not "state actors," but, as discussed above, that determination needs a more developed record. At this point the Court believes that the claim should remain in for further development.

The Court cannot discern any other federal claims under any of the other federal statutes or constitutional amendments that Plaintiff cites. In addition to those discussed above, Plaintiff cites the Lilly Ledbetter Fair Pay Act, the Older Workers Benefit Protection Act of 1990, the Warn Act,

_____

[3]<u>Levin</u> ultimately held that the defendants were entitled to qualified immunity on the equal protection claim, but that issue is not before the Court.

the First Amendment, 42 U.S.C. §§ 1981, 1985, 1986, Title VII, the Age Discrimination Act of 1974, the False Claims Act, and the Fraud Enforcement and Recovery Act.

The Lily Ledbetter Fair Pay Act of 2009 does not create a cause of action, it only addresses when a discriminatory act is deemed to have occurred, effectively reversing a Supreme Court decision. *Lilly Ledbetter Fair Pay Act of 2009*, Pub. L. No. 111-2, 123 Stat. 5;  Randall v. Rolls-Royce Corp., — F.Supp.2d —,  2010 WL 3816700 * 10 (S.D. Ind. 2010).  It is an amendment to Title VII, not a separate cause of action.  Similarly, the Older Workers Benefit Protection Act of 1990 was an amendment to the Age Discrimination in Employment Act of 1967.  *Older Workers Benefit Protection Act*, Pub. L. No. 101-433, 104 Stat. 978.

The Warn Act, 29 U.S.C. § 2101 *et seq.*, regards the notice required before plant closings and mass layoffs, neither of which are implicated here.

The Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits an entity receiving federal funds from discriminating against an individual based on that individual's disability.  Disability is defined as "'a physical or mental impairment that substantially limits a major life activity, a record of such impairment, or [being] regarded as having such impairment.'" Garg v.

Potter, 521 F.3d 731, 736 (7th Cir. 2008)(bracketed material added), *citing* 42 U.S.C. § 12102(a)(other citations omitted).  Here, Plaintiff does not allege that she has a disability, and no plausible inference arises that she has any physical or mental impairments.  To the contrary, she alleges that she was performing her job well and was fired only because of her age, not because of any existing or perceived disability.

A qui tam action under the False Claims Act is about financial fraud against the federal government.  *See* 31 U.S.C. § 3729.  No plausible inference arises on these allegations that the Agency has defrauded the federal government.  In any event, a qui tam action cannot be brought by an individual proceeding pro se.  United States ex rel. Friedrich LU v. Ou, 368 F.3d 773, 775 (7th Cir. 2004)(agreeing with Eight Circuit that "a pro se relator cannot prosecute a qui tam action, because he is acting as an attorney for the government."), *reversed on other grounds by* Eisenstein v. City of New York, 129 S.Ct. 2230 (2009).  The Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617, cited by Plaintiff, only amended the False Claims Act (among other statutes) and does not provide a separate cause of action.

The Age Discrimination Act of 1975 prohibits age discrimination by programs and activities receiving federal financial assistance.  42 U.S.C.

§ 6102. However, it does not apply to "[a]ny employment practice of any employer, employment agency, . . .except for any program or activity receiving Federal financial assistance for public service employment under the Comprehensive Employment and Training Act of 1974." 45 C.F.R. § 90.3(b)(2). No plausible inference arises on these allegations that Plaintiff was participating in such a training program.[4]

Plaintiff also cites Title VII, but Title VII does not apply to age discrimination claims. It applies to employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, 42 U.S.C. § 1981 applies to race discrimination. 42 U.S.C. § 1981(a)("All persons . . . shall have the same right . . . as is enjoyed by white citizens . . ."). 42 U.S.C. § 1985(3) applies to conspiracies "motivated by racial, or other class-based discriminatory animus." Smith v. Gomez, 550 F.3d 613, 617-18 (7th Cir. 2008). And, there can be no 42 U.S.C. § 1986 claim without a § 1985 claim. Id.

Plaintiff also cites the First Amendment, but the Court cannot discern a First Amendment claim. Even if Plaintiff can be characterized as a public employee (see discussion above), a First Amendment claim would exist

_____

[4]Defendants argue that Plaintiff failed to allege that the Agency receives federal funds. They cite no case law requiring that allegation to state a claim, but, in any event, it appears from the Older American's Act that federal funds are involved.

only if she were retaliated against for speech made as a citizen on a matter of "public concern." Kuchenreuther v. City of Milwaukee, 221 F.3d 967, 973 (7th Cir. 2000). The comments must also have been made outside the scope of her employment duties. *See* Garcetti v. Ceballos, 547 U.S. 410 (2006). Internal complaints made by Plaintiff to her superiors about age discrimination against her would arguably be more related to Plaintiff's "personal interests as an employee" rather than to matters of public concern. *See* Hartman v. Board of Trustees of Community College, 4 F.3d 465, 472 (7th Cir. 1993); Gray v. Lacke, 885 F.2d 399, 411 (7th Cir. 1989) (employee's complaints to supervisors for purpose of stopping sexual harassment by another supervisor was not a matter of public concern). In any event, there are simply not enough facts alleged for the Court to determine that a plausible First Amendment claim exists.

## II.    State claims: Plaintiff makes out arguable state claims for breach of contract and promissory estoppel.

Plaintiff lists several actions that appear to fall into the category of state claims. Supplemental jurisdiction may be taken over state claims to the extent they are "part of the same case or controversy." 28 U.S.C. § 1367(a).

Starting with the breach of contract claim, Plaintiff alleges that:

> The defendants' refusal to reappoint plaintiff to her prior
> position, to offer pay increases or promotions to the plaintiff and
> to provide plaintiff an institutional remedy for the violation of her
> rights constitutes a breach of plaintiff's contract of employment,
> as well as plaintiff's reasonable expectations in continued
> employment and promotion opportunities when plaintiff took her
> position with defendants over 21 years ago.

(Complaint ¶ 47).

Plaintiff does not explain what kind of "contract" was breached. She alleges later that she "believes no written employment contract was provided to her." (Complaint ¶ 50). If there was no legally enforceable contract, then no breach of contract claim exists. "Illinois continues to follow the general rule that an at-will employee may be discharged by his or her employer for any reason at any time." Graham v. Commonwealth Edison Co., 318 Ill.App.3d 736, 743 (1st Dist. 2000). However, an implied contract can form the basis for a breach of contract action, and, given Plaintiff's pro se status, the Court believes that she has sufficiently pled a breach of contract claim. A more definite statement is unnecessary. Defendants should already have their own knowledge of whether a contract exists, and if they need more information on the factual basis of this claim they can serve interrogatories on Plaintiff.

The promissory estoppel claim should also stay in for further development.  "To establish a claim based upon promissory estoppel, a plaintiff must allege and prove that '(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment.'" Ross v. May Co., 377 Ill.App.3d 387, 393 (1st Dist. 2007).  This claim would be apparently be in the alternative to the breach of contract claim.  Plaintiff alleges that she reasonably relied on Defendants' promises of employment to her detriment because she was lulled into not looking for other employment.  Plaintiff may have an uphill battle.  See McInerney v. Charter Golf, Inc., 176 Ill.2d 482, 492 (1997) (promissory estoppel claim based on oral promise of lifetime employment was subject to statute of frauds).  However, the Court believes the claim should remain in for now, particularly in light of Defendants' lack of substantive argument on this claim.

The rest of the Plaintiff's list of causes of actions, however, do not make out state claims.

For example, Plaintiff sets forth claims for failure to adequately hire, supervise and train management personnel.  The elements of a negligent

hiring/retention claim are:

> "(1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury."

Van Horne v. Muller, 185 Ill.2d 299, 311 (1998). "The tort of negligent supervision has not been distinguished from the tort of negligent retention." Helfers-Beitz v. Degelman, 939 N.E. 2d 1087, 1090 (3rd Dist. 2010). No inference arises that the defendants were unfit for their positions or posed a danger of harm to Plaintiff, or that the Agency was on notice of such a risk. Plaintiff's claim is that she was fired because of her age. That alone does not make out a negligent hire/supervision claim. The same conclusion is reached for the negligent training claim. *See* Doe v. Brouillette, 389 Ill.App.3d 595, 606 (1st Dist. 2009)( "'In order to hold an employer liable for injuries resulting to third persons from negligent training or supervision of an employee, it must be established "that the employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, having this knowledge, failed to supervise the employee adequately, or take other action to prevent the harm."'")(citations omitted).

Plaintiff also makes out no claim for "failure to adequately investigate."  No plausible inference arises that Defendants had a legal duty to investigate anything, or that they breached such a duty.  The harm Plaintiff suffered was caused by age discrimination, not a failure to investigate.

The allegations also do not state a claim for negligent and intentional infliction of emotional distress.  The elements of an intentional infliction of emotion distress claim are:

> (1) extreme and outrageous conduct; (2) intent or knowledge by the actor that there is at least a high probability that his or her conduct would inflict severe emotional distress and reckless disregard of that probability; and (3) severe and emotional distress. . . Extreme and outrageous conduct sufficient to create liability for intentional infliction of emotional distress is defined as conduct that exceeds all bounds of human decency and that is regarded as intolerable in a civilized community.

Adams v. Sussman & Hertzberg, Ltd., 292 Ill.App.3d 30, 38 (1st Dist. 1997); Brackett v. Galesburg Clinic Assoc., 293 Ill.App.3d 867, 871 (3d Dist. 1997)("conduct must go beyond all bounds of decency and be considered intolerable in a civilized community").

In the Court's opinion, firing an employee on pretextual grounds is not, by itself, "extreme and outrageous conduct," even if the motive for the

firing was illegal discrimination. *See* <u>Lewis v. School District</u>, 523 F.3d 730, 747 (7th Cir. 2008)("We cannot subject employers to intentional infliction of emotional distress claims each time they decide to discharge an employee-even an employee with severe emotional problems-unless their conduct truly is egregious."). Plaintiff's allegations give rise only to an inference the Defendants discriminated against her because of her age. That alone does not equate to extreme and outrageous behavior. *See* <u>Graham v. Commonwealth Edison Co.</u>, 318 Ill.App.3d 736, 746 (1st Dist. 2000)(courts "hesitate" to find IIED claims in employment context: "Courts are concerned that, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action."). Additionally, no plausible inference arises that Plaintiff suffered the kind of severe emotional distress required to make out this claim.

Nor is there a claim stated for negligent infliction of emotional distress. "To state a cause of action for the tort of negligent infliction of emotional distress, a plaintiff must allege that the infliction of emotional distress arose out of the negligent acts of a defendant." <u>Brackett v. Galesburg Clinic Ass'n</u>, 293 Ill.App.3d 867, 872 (3rd Dist. 1997). According

to the allegations, Defendants knowingly and intentionally downsized

Plaintiff because of her age.  Their behavior was deliberate, not negligent.

As for the tort of interference with business relationship, it does not

apply here because there is no alleged business relationship other than

that between Plaintiff and Defendants.  An employer cannot be liable for

tortious interference for terminating its own business relationship with an

employee.  Vickers v. Abbott Laboratories, 308 Ill.App.3d 393, 411 (1st Dist.

1999)("Illinois courts have held that a corporate employer cannot interfere

with its own business relationship.").

Plaintiff also lists a claim for  "loss of status," (d/e 1, p. 6, ¶ 20), but

the Court knows of no such claim.  Plaintiff may be describing the injuries

she suffered rather than pursuing a separate claim.  If she is trying to state

a claim for defamation, no plausible inference of such a claim arises.  *See*

Vickers, 308 Ill.App.3d at 400 (explaining elements of defamation claim).

Lastly, Plaintiff lists the "Illinois Equal Employment Opportunity Act."

(d/e 1, p. 11, ¶¶ 45-46).  If she means the Illinois Human Rights Act,

775 ILCS 5/1-101 *et seq.*, the Illinois Human Rights Commission has

exclusive jurisdiction over civil rights violations covered by the Act.  775

ILCS 5/8-111(C).  Other courts lack jurisdiction to hear claims under the

Act, except on judicial review of the Department's decision.  Shah v.

Inter-Continental Hotel Chicago Operating Corp., 314 F.3d 278, 281-82

(7th Cir. 2002); Owens v. Department of Human Rights, 403 Ill.App.3d 899

(1st Dist. 2010)(example of appeal from Department of Human Rights

decision on allegations of age and race discrimination in employment.).

### Conclusion

The Court concludes that Plaintiff states federal claims for age

discrimination and retaliation under the ADEA, and an equal protection

claim based on age discrimination.  Plaintiff also makes out state claims for

breach of contract and promissory estoppel.  The rest of the statutes and

"claims" listed in the Complaint do not make out plausible state or federal

claims and should be dismissed.

WHEREFORE, the Court RECOMMENDS that Defendants' Motion to

Dismiss be granted in part and denied in part (d/e 6).  The Court

recommends that all of Plaintiff's claims be dismissed without prejudice

**except for**: 1) Plaintiff's federal claims for age discrimination and retaliation

under the Age Discrimination and Employment Act of 1967;   2) a

Fourteenth Amendment equal protection claim based on age

discrimination, actionable through 42 U.S.C. § 1983;  and,  3) state law

claims for breach of contract and promissory estoppel.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:     February 22, 2011

_____*s/ Byron G. Cudmore*_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE